# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ENERCON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 09-cv-394-P-S |
| | ) | |
| GLOBAL COMPUTER SUPPLIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO DISMISS

The dispute in this case arises from Plaintiff Enercon's purchase of certain computer software from Defendant Global Computer Supplies, Inc. ("Global").  After the software was delivered and Enercon had partially paid for it, Enercon realized it did not need any of the software and had been overcharged to boot.  In a seven-count Complaint (Docket # 1-1) alleging fraud, negligence, mutual mistake, and statutory violations, Enercon seeks damages and rescission of its contracts with Global.  Before the Court is Defendant's Motion to Dismiss (Docket # 10) ("Def.'s Mot.") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), which the Court GRANTS IN PART and DENIES IN PART for the reasons stated herein.

## I.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint.  Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004).  The general rule of pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This short and plain statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation and alteration omitted).  However, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (internal quotation omitted).

There is an exception to the general rule of pleading that applies to claims of fraud or mistake. <u>See</u> <u>Alternative Sys. Concepts, Inc. v. Synopsys, Inc.</u>, 374 F.3d 23, 29 (1st Cir. 2004); <u>Westinghouse Elec. Co. v. Healy</u>, 502 F. Supp. 2d 138, 141 (D. Me. 2007). These claims are "subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 226 (1st Cir. 2004). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The heightened requirement serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." <u>New England Data Servs., Inc. v. Becher</u>, 829 F.2d 286, 289 (1st Cir. 1987).

When considering a motion to dismiss pursuant to either Rule 9(b) or Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in Enercon's favor. <u>Gargano v. Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009). The Court will not, however, "credit conclusory assertions, subjective characterizations or outright vituperation." <u>Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp.</u>, 246 F.3d 1, 5 (1st Cir. 2001) (internal quotation omitted). Distinguishing sufficient from insufficient

2

pleadings is "a context-specific task that requires the [Court] to draw on its judicial experience and common sense." Ashcroft, 129 S. Ct. at 1950.

## II.    FACTUAL BACKGROUND

Plaintiff Enercon, a Maine corporation, manufactures and sells electronic devices. These devices employ computer technologies or are designed for use in computers. In some cases, Enercon installs on these devices computer software, including Norton AntiVirus and PC Anywhere software. To ensure that its customers obtain current, licensed versions of this software when they purchase Enercon's devices, Enercon purchases licenses for any software that it installs. It is then up to Enercon's customers to purchase renewal licenses or new or upgraded versions of the installed software, as the case may be.[1] Defendant Global is a Georgia corporation doing business in Maine. Global sells computer software, including Norton AntiVirus and PC Anywhere software, as well as original and renewal licenses for that software. This case arises from a series of transactions between Enercon and Global that occurred during April 2008.

During the relevant timeframe, Global employed an individual named Tom Carra, who acted as Global's sales agent in its dealings with Enercon. Enercon employed an individual named Bambi Bahr, who was relatively new to her position as purchaser for Enercon. At some point in April 2008, Carra contacted Bahr by telephone. Carra told Bahr that Enercon's licenses for Norton AntiVirus and PC Anywhere software had expired or were about to expire, and that Enercon had to renew the licenses. He also told her that if she ordered renewal licenses immediately, he could arrange for a three-month grace period so that the licenses that had

---

[1] The Norton AntiVirus license lasts for one year. Enercon customers who purchase devices on which Norton AntiVirus software is installed must renew their licenses annually. In contrast, the PC Anywhere license lasts forever. Only Enercon customers who desire to upgrade to newer versions of PC Anywhere have the obligation to make future purchases.

already expired would not lapse.  In other words, Carra told Bahr that if she acted quickly, Enercon would be in compliance with its licensing agreements.

Following this call, Bahr filled out two purchase orders.  The first, dated April 18, 2008, called for "1,000 units of Norton AntiVirus and 1,000 units of PC Anywhere software."  (Compl. ¶ 24.)  The second, dated April 29, 2008, called for an additional "1,040 units of the Norton AntiVirus and 1,040 units of the PC Anywhere software."  (Id. ¶ 26.)  The two purchase orders specified that the price for each unit of Norton AntiVirus was $21.80 and the price for each unit of PC Anywhere software was $45.03.  (See Compl. at Exs. 1, 2.)  Global shipped the units specified in the first purchase order on April 29, 2008, and invoiced Enercon the next day for $66,830—the cost of all units shipped.  Global shipped the units specified in the second purchase order on two dates.  It shipped the first portion on May 1, 2008, and invoiced Enercon the next day for $24,058.80; it shipped the balance on May 21, 2008, and invoiced Enercon the next day for $45,444.40.  All told, Global shipped to Enercon $136,333.20 worth of Norton AntiVirus and PC Anywhere software, and invoiced Enercon accordingly.  Enercon paid the first two invoices in full with a check, dated May 7, 2008, in the amount of $90,888.80.  However, before it paid the third invoice, Enercon discovered it had no need for any of the units Bahr had ordered.  By June 2008, Enercon had notified Global of the problem and has repeatedly requested that Global return the $90,888.80 payment.  Global has refused.

Enercon explains that it is not obligated to renew the Norton AntiVirus licenses and that the PC Anywhere software does not require renewal licenses at all.  It alleges that Carra knew or should have known these facts when he called Bahr and told her that Enercon had to renew its licenses for this software.  Enercon further alleges that Carra "negligently, intentionally or knowingly misrepresented the need for Enercon to renew these licenses and took advantage of an

obviously inexperienced Enercon employee to push through these orders."  (Compl. ¶ 39.)  In addition, Enercon alleges that Global knowingly and intentionally overcharged it for the Norton AntiVirus renewal licenses.  Enercon says that Global charged it $21.80 per renewal license, which is the price of an original license, instead of the price for a renewal license, which is typically "a fraction of the original license fee."[2]  (Id. ¶ 41.)

Based on these facts, Enercon pleads seven tort, contract, and statutory claims against Global.  In Counts I, II, III, and VI, Enercon claims that Global is liable for the torts of intentional, negligent, and unintentional misrepresentation, and conversion.  In Counts IV and V, Enercon effectively seeks rescission of its contracts with Global based on fraud in the inducement and mutual mistake of fact.  In Count VII, Enercon claims Global is liable for violation of the Maine Unfair Trade Practices Act (the "UTPA"), 5 M.R.S.A. § 205-A, et seq.

## III.    DISCUSSION

Global advances three arguments for dismissal of Enercon's Complaint.  First, it argues that Enercon does not have standing to recover under the UTPA because it did not purchase the Norton AntiVirus renewal licenses and PC Anywhere software primarily for personal, family, or household purposes as the UTPA requires.  Second, it argues that Maine does not recognize the tort of unintentional misrepresentation and that Count III must therefore be dismissed.  Finally, it contends that Rule 9(b) requires dismissal of all of Enercon's remaining common law claims,

---

[2] It is not crystal clear from the Complaint or the attached purchase orders whether Bahr intended to order Norton AntiVirus renewal licenses or original licenses.  (See Compl. ¶¶ 24, 26; Exs. 1, 2 (failing to specify renewal or original licenses and calling only for "Symantec Antivirus Corporate Edition for Workstati[on]").)  However, Enercon says Global shipped exactly what the second purchase order specified—namely, "1,040 units of Norton AntiVirus license renewals."  (See id. ¶¶ 32, 34.)  Enercon does not claim it received goods Bahr did not order.  Moreover, allegedly Bahr was responding to Carra's representation that Enercon required renewal licenses.  It is reasonable to infer that Bahr intended to order Norton AntiVirus renewal licenses and that Global delivered Norton AntiVirus renewal licenses.  The Court assumes the truth of the allegation that Global nevertheless charged Enercon for original licenses.

which share a core allegation of fraud or mistake, because Enercon has failed to plead with sufficient particularity the circumstances constituting the fraud or mistake.

### A.       UTPA Violation (Count VII)

The UTPA "creates a private right of action <u>only</u> for those who have purchased goods, services or property 'primarily for personal, family or household purposes.'" <u>C-B Kenworth, Inc. v. Gen. Motors Corp.</u>, 706 F. Supp. 952, 957 (D. Me. 1988) (emphasis in original) (quoting 5 M.R.S.A. § 213(1)).  Global points out that Enercon has not alleged that its purchases of the Norton AntiVirus renewal licenses and PC Anywhere software fit within this explicit limitation. (<u>See</u> Def.'s Mot. at 2-4.)  In response, Enercon says it is fair to infer that its customers purchase the devices it manufactures primarily for personal, family, or household purposes, and that it has therefore stated a claim under the UTPA.  (<u>See</u> Pl.'s Opp'n to Mot. to Dismiss (Docket # 11) ("Pl.'s Opp'n") at 16.)  The Court does not agree.  First, Enercon does not allege anywhere in the Complaint that its customers purchase its devices primarily for personal, family, or household purposes.  It is therefore unreasonable to infer that they do.  Second, and more importantly, Enercon appears to assume that so long as its customers' purchases fall within the statutory limitation, Enercon may sue Global under the UTPA, notwithstanding that its purchases of the renewal licenses and software were primarily for resale purposes.  Enercon's assumption is contrary to the express language of the statute, which provides a right of action to "[a]ny person who purchases . . . goods . . . primarily for personal, family or household purposes and thereby suffers any loss of money or property . . . as a result of the use or employment by another person" of an unfair or deceptive act or practice.  5 M.R.S.A. § 213(1).  The Court therefore GRANTS IN PART Global's motion to dismiss and DISMISSES Count VII of Enercon's Complaint WITH PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B.     Unintentional Misrepresentation (Count III)

Almost thirty years ago, an appellant before the Maine Law Court urged adoption of the torts of negligent and innocent misrepresentation as defined in sections 552 and 552C of the Restatement (Second) of Torts, respectively.  See Emerson v. Ham, 411 A.2d 687, 690 (Me. 1980).  The Law Court refused for procedural reasons.  Id.  Ten years later, the Law Court expressly adopted the Restatement's formulation of the tort of negligent misrepresentation, explaining that it "reflects a well-reasoned exception" to the scienter requirement traditionally applicable in fraud actions.  Chapman v. Rideout, 568 A.2d 829, 830 (Me. 1990).  Negligent misrepresentation, as defined in section 552 of the Restatement, has since become a familiar cause of action in Maine.  See, e.g., Rand v. Bath Iron Works Corp., 2003 ME 122, ¶ 13, 832 A.2d 771, 774; Perry v. H.O. Perry & Son Co., 1998 ME 131, ¶ 5, 711 A.2d 1303, 1305.  To date, however, the Law Court has not adopted the Restatement's formulation of the tort of innocent misrepresentation.[3]  Cf. Bob Chambers Ford v. Dealer Computer Servs., Inc., No. 98-140-B-C, 2000 U.S. Dist. LEXIS 2446, at *28 (D. Me. Jan. 12, 2000); Whitney v. Getty Petroleum Corp., No. 92-249-P-H, 1993 U.S. Dist. LEXIS 11454, at *12 (D. Me. June 9, 1993).  At least two Justices of the Maine Superior Court have granted summary judgment on innocent misrepresentation claims or dismissed them on this ground.  See Tripp v. Williams, No. CV-91-1670, 1993 Me. Super. LEXIS 329, at *9 (Me. Super. Ct., Cum. Cty., Dec. 2, 1993) (Saufley, J.); Cyr v. Symonds, No. CV-81-490, 1983 Me. Super. LEXIS 1, at *3-4 (Me. Super. Ct., And. Cty., Jan. 3, 1983) (Clifford, J.).

---

[3] The Restatement defines the tort as follows:

> One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

Restatement (Second) of Torts § 552C(1) (1977).

Enercon recognizes that this is the state of the law. It nonetheless contends that innocent or so-called "unintentional" misrepresentation is a viable theory of tort liability in Maine. The Court does not share Enercon's view and declines its invitation to change the law by allowing its unintentional misrepresentation claim to proceed. See Metayer v. PFL Life Ins. Co., No. 98-177-P-C, 1999 U.S. Dist. LEXIS 23432, at *28-30 (D. Me. July 15, 1999) (characterizing adoption of the tort without clear signals from the Law Court as "no small step"). The Court therefore GRANTS IN PART Global's motion to dismiss and DISMISSES Count III of Enercon's Complaint WITH PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6).[4]

### C.    The Remaining Claims

The parties devote much of their memoranda to the question of whether the heightened pleading standard of Rule 9(b) applies to the remaining claims and, if it does, whether Enercon has complied with it. Before addressing these issues, the Court pauses to survey the lay of the land. Enercon says it purchased goods it did not need at too high a price and wants its money back. (See Compl. ¶¶ 37, 47, 51, 55, 59, 67, 74.) Five claims for relief remain: intentional misrepresentation, negligent misrepresentation, fraud in the inducement, mutual mistake of fact, and conversion. Global has moved to dismiss each of these claims solely (as far the Court can tell) because Enercon has stated them with insufficient particularity under Rule 9(b). The Court concludes that Global is correct, for the most part, but that it is appropriate to grant Enercon leave to replead the deficient claims. See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009) (observing that "[f]or deficiencies under Rule 9(b),

---

[4] Enercon believes that Global did not move to dismiss the unintentional misrepresentation claim for failure to state a claim pursuant to Rule 12(b)(6). (See Pl.'s Opp'n at 8.) The Court disagrees. Global specifically states that "unintentional misrepresentation is not . . . recognized by the courts of Maine," and that it should be dismissed because it is "[a]drift without any anchor in Maine case law or legal authority." (Def.'s Mot. at 4-5.) These are arguments that the unintentional misrepresentation claim, which imposes strict liability on sellers for their misrepresentations, see Emerson, 411 A.2d at 690, "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

leave to amend is often given"); Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108, 127 (D. Me. 2004).   The Court further concludes that although the mutual mistake of fact and conversion claims likely are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim, it will not dismiss them on this basis in the absence of a motion.   See Martinez-Rivera v. Ramos, 498 F.3d 3, 7 (1st Cir. 2007).

### 1.    Mutual Mistake of Fact (Count V)

The parties agree that under certain circumstances a mutual mistake of fact will justify rescission of a contract.   See Miller v. Lentine, 495 A.2d 1229, 1231 (Me. 1985).   They also agree that Rule 9(b) applies to Enercon's mutual mistake of fact claim.   See Fed. R. Civ. P. 9(b). They disagree in its application.   Global contends that Enercon has failed to put it on sufficient notice of the particular mistake that justifies rescission in this case.   Global says it cannot tell from the Complaint whether the parties allegedly were mistaken in their belief that Enercon needed to purchase the software or that the contract price should have been for original as opposed to renewal Norton AntiVirus licenses.   In response, Enercon says the parties were mistaken as to both Enercon's need for the software and the contract price.   It claims it has stated these two mistakes with sufficient particularity to pass muster under Rule 9(b).

The Court agrees with Global; the Complaint's allegation of mistake is insufficient. Enercon alleges that "[i]f the actions of Global were not fraud or conscious misrepresentations, they were mistake of fact and the actions of Enercon in ordering based on this mistake in fact was itself a mistake of fact and so the contract should be rescinded."  (Compl. ¶ 61.)  The Court does not know what to make of this allegation, which is the centerpiece of the mutual mistake claim.  First, this allegation refers to one mistake, not two.  Second, although the allegation refers to a mistake that is somehow based on Global's actions and representations, there is no allegation

in the Complaint that Carra ever made any representation with respect to contract price.[5] Finally, the allegation fails to suggest, much less state, that the parties' mutual mistake caused them to "agree[] to something other than that established by" their contracts.  Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc., 355 A.2d 913, 918 (Me. 1976) (requiring that the mistake "so vitally affect the facts upon the basis of which the bargain was struck that the written contract does not express the intent of the parties").  From all that appears, the contracts accurately reflect the parties' agreement, and the mistake (if there was one) was either unilateral or, if mutual, related to the collateral matter of whether Enercon needed to purchase any software in the first place.  The Court is far from convinced that Enercon has stated a claim for rescission under Rule 8, let alone stated it with sufficient particularity to satisfy Rule 9(b).  See generally id.  The Court therefore GRANTS IN PART Global's motion to dismiss and DISMISSSES Count V pursuant to Rule 9(b) WITHOUT PREJUDICE to Enercon's right to replead.

## 2.      Conversion (Count VI)

The parties dispute whether Rule 9(b) applies to the conversion claim.  By its terms, Rule 9(b) does not apply.  See Fed. R. Civ. P. 9(b).  However, Global takes the position that the heightened standard applies to the conversion claim because the "underpinning" of the claim is fraud.  (Def.'s Mot. at 14 (citing Cardinale, 567 F.3d at 15).)  Enercon disagrees.  Enercon maintains that its conversion claim is merely a cause of action "pursued alongside a fraud cause

---

[5] Enercon takes the position that Carra did make misrepresentations with respect to price and that these misrepresentations "occurred in the context of a series of purchase orders and invoices, specifically identified by date and identification number and attached to the Complaint."  (Pl.'s Opp'n at 10.)  It is true that the contract price appears on Enercon's purchase orders and Global's invoices.  (See Compl. at Exs. 1-4, 6.)  However, Bahr filled out the purchase orders and they pre-date the invoices.  It is unreasonable to infer, based on these exhibits, that Carra was the source of the incorrect contract price.  Enercon's factual allegations do nothing to make this inference reasonable.  (See id. ¶¶ 27-30.)  Assuming Carra made any misrepresentations, the surrounding circumstances are a matter of pure speculation.  Moreover, Enercon alleges that Carra and Global "knowingly and intentionally overcharged Enercon" for the Norton AntiVirus renewal licenses.  (Compl. ¶ 39.)  It is a mystery how such alleged knowing and intentional conduct can form the basis of a mutual mistake with respect to contract price.

of action" and should be subject to the ordinarily applicable pleading standard of Rule 8(a). (Pl.'s Opp'n at 5.)

The First Circuit recently instructed that the heightened pleading standard of Rule 9(b) applies to "associated claims where the core allegations effectively charge fraud" and of which "fraudulent misrepresentation is the lynchpin." Cardinale, 567 F.3d at 14-15. With Cardinale as a guide, the Court concludes that Rule 9(b) applies to Enercon's conversion claim. To state a claim for conversion under Maine law, Enercon must allege (1) it has a property interest in the $90,888.80 (the property it alleges was converted), (2) it had a right to possession of this money at the time of the alleged conversion, and (3) Global has refused a demand for its return. See Withers v. Hackett, 1998 ME 164, ¶ 7, 714 A.2d 798, 800; Keyes Fibre Co. v. Lamarre, 617 A.2d 213, 214 (Me. 1992). With regard to Enercon's present property interest, Enercon must remember that it transferred the $90,888.80 to Global in exchange for software. Absent rescission of this transaction, Enercon cannot properly allege that it has a present interest in the $90,888.80. See Masters v. Van Wart, 134 A. 539, 542 (Me. 1926).

Enercon has proffered two bases for rescission: fraud in the inducement and mutual mistake of fact. Both are subject to Rule 9(b). It can fairly be said then that fraud or mistake is the "lynchpin" of the conversion claim and, under Cardinale, Enercon must plead the circumstances constituting such fraud or mistake with particularity. See Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher, 635 F. Supp. 18, 22 (E.D. Pa. 1985).[6] For

---

[6] This Court's decision in Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108 (D. Me. 2004), is not to the contrary. Enercon says Atkinson subjected a fraud claim to the heightened standard but subjected a conversion claim to the lower Rule 8(a) standard. It argues the outcome here should be the same. First, from all that appears in Atkinson, the defendant moved to dismiss the conversion claim solely on the ground that it was preempted by section 301 of the Labor Management Relations Act. See Atkinson, 350 F. Supp. 2d at 121-24. The Court had no occasion to discuss what pleading standard applied to the conversion claim. Second, the Atkinson plaintiffs' fraud and conversion claims were factually and analytically distinct. Whereas the conversion claim was based on the defendant employer's withholding of a percentage of plaintiffs' wages from on or about August 2000 until December 2002, the fraud claim was based on an allegedly false representation in 2003. See id. at 112-13, 123-26.

the reasons already given with respect to the mutual mistake claim, and for those explained below with respect to the fraud and fraud in the inducement claims, the Court GRANTS IN PART Global's motion to dismiss and DISMISSES Count VI pursuant to Rule 9(b) WITHOUT PREJUDICE to Enercon's right to replead.[7]

### 3.    Negligent Misrepresentation (Count II)

Global takes the same position with respect to Enercon's negligent misrepresentation claim that it does with respect to the conversion claim.  It contends the heightened Rule 9(b) standard applies because Enercon's "'core allegations . . . effectively charge fraud.'"  (Def.'s Mot. at 6 (quoting Cardinale, 567 F.3d at 15).)  Enercon maintains that its claim for negligent misrepresentation is distinct from its fraud claim because it sounds in negligence and not fraud and is therefore subject to the more relaxed Rule 8(a) standard.[8]  With Cardinale as a guide, the Court concludes that Rule 9(b) does not apply to Enercon's negligent misrepresentation claim.

As noted above, the Law Court has adopted the Restatement's formulation of negligent misrepresentation:

---

Here, in contrast, the fraud claim is inextricable from the conversion claim.  Thus, Atkinson is of no help to Enercon.

[7] The Court hastens to note, however, that the conversion claim, as presently stated, would likely have been subject to dismissal pursuant to Rule 12(b)(6) if Global had so moved.  "A purchaser, defrauded in a contract of sale, may elect one of two remedies.  He may rescind the sale, and, in an action of assumpsit for money had and received, recover back the purchase price; or he may without rescission sue in tort for deceit."  Bragdon v. Chase, 99 A.2d 308, 310 (Me. 1953).  Should a defrauded purchaser elect the first remedy, "rescission and tender of restitution are conditions precedent to the maintenance of the action" for money had and received.  Masters, 134 A. at 542 (emphasis added).  Enercon not only has pleaded the wrong cause of action, but also has failed to allege satisfaction of the conditions precedent to maintenance of the correct one.  See Ketch v. Smith, 161 A. 300, 300 (Me. 1932) ("An action for money had and received lies when one has in his possession money which in equity and good conscience belongs to another, or if, having had the money, he has paid it out with knowledge of the plaintiff's right to it.").  However, in the absence of a motion, the Court will not dismiss Count VI for failure to state a claim.

[8] Enercon cites a case interpreting Maine Rule of Civil Procedure 9(b) for this proposition.  (See Pl.'s Opp'n at 8 (citing Hayes v. Iworx, Inc., No. CV-06-168, 2006 Me. Super. LEXIS 162, at *12 (Me. Super. Ct., Cum. Cty., July 31, 2006) (Crowley, J.)).)  However, the applicability of the heightened standard to a claim in federal court requires an interpretation of the federal rule.  See Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007).

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Rand, 2003 ME 122, ¶ 13, 832 A.2d at 774 (emphasis omitted) (quoting Restatement (Second) of Torts § 552(a)(1) (1977)).  Enercon has alleged that Global's sales agent, Carra, negligently represented to Bahr that Enercon needed to purchase renewal licenses for Norton AntiVirus and PC Anywhere software.  Although it is true that Enercon also alleges that Carra intentionally misled Bahr when he made this alleged misrepresentation, it cannot be said that fraudulent misrepresentation is the "lynchpin" of the negligent misrepresentation claim.  The claim remains plausible absent allegations of fraud.  But see Cardinale, 567 F.3d at 14 (construing fraud as the "lynchpin" of a tortious interference claim under Rhode Island law where the tortfeasors were alleged to have interfered by "fraudulent conduct and misrepresentations").

Similarly, the Court is not convinced that Enercon's "core allegations effectively charge fraud."  Cardinale, 567 F.3d at 15.  The First Circuit's reading of Rule 9(b) to cover associated claims where the core allegations effectively charge fraud derives from Hayduk v. Lanna, in which the court required that claims of fraud and conspiracy to commit fraud satisfy the heightened pleading standard.  775 F.2d 441, 443 (1st Cir. 1985) (noting that "in cases in which fraud lies at the core of the action, [Rule 9] does not permit a complainant to file suit first, and subsequently to search for a cause of action" (emphasis in original) (internal quotation omitted)).  The court noted that the "conspiracy alleged [was] directly linked to the fraud allegations" and that "fraud [lay] at the core of the action."  Id.  The result in Hayduk does not strike the Court as particularly controversial.

13

Following Hayduk, the First Circuit has held that Rule 9(b) requires plaintiffs in civil actions for violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 et seq., to plead predicate acts of mail and wire fraud with particularity.  See DeMauro v. DeMauro, No. 99-1589, 2000 U.S. App. LEXIS 2263, at *6 (1st Cir. Feb. 16, 2000); New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987).  Elsewhere, the court has hypothesized that if a plaintiff were to bring claims under the securities laws, some of which require proof of fraud and some of which do not, Rule 9(b) "probably" would apply to all of them, if they were based on a "unified course of fraudulent conduct."  Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996), superseded on other grounds, Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1)-(2).

In Cardinale itself, the court observed that Rule 9(b) applied "to most—possibly all" of the plaintiff's claims of breach of fiduciary duties of loyalty, care, and disclosure, unjust enrichment, and fraud and misrepresentation.  Cardinale, 567 F.3d at 15.  The court did not make this observation idly, nor did it stray from the general principle announced in Hayduk and followed thereafter.  On the contrary, the court was able to determine that the "ascertainable core" of these claims was the defendants' failure to disclose that a company in which the plaintiff owned an equity stake was about to be sold, and that the plaintiff allegedly suffered damages as a result of this nondisclosure.  Id.  The court described the various claims merely as "different legal theories offered to create liability based on the underlying events," which amounted to fraud by nondisclosure.  Id.  In this context, the court noted that it reads Rule 9(b) "expansively to cover associated claims where the core allegations effectively charge fraud," even when those claims are for negligent misrepresentation and breach of fiduciary duty.  Id. (citing Hayduk, 775 F.2d at 443).

This case is distinguishable from the <u>Hayduk</u> line of cases. There are plausible explanations for Enercon's execution of the contracts with Global that do not rely on allegations of fraud. It is fair to infer from the fact that Carra called Bahr to discuss expired licenses that Carra or someone else at Global initially sold those licenses to Enercon. Perhaps his call was nothing more than a routine follow-up with a previous customer whom he negligently advised to purchase renewal licenses without informing himself of all the facts. These allegations adumbrate a set of circumstances plausibly free of fraud. Negligence and perhaps inexperience provide an adequate explanation. The Court concludes that the negligent misrepresentation claim is not subject to Rule 9(b) and DENIES IN PART Global's motion to dismiss.

###    4.    Intentional Misrepresentation and Fraud in the Inducement (Counts I and IV)

The parties agree that Rule 9(b) applies to Enercon's fraud claim (styled as an intentional misrepresentation claim) and fraud in the inducement claim. At a minimum, Rule 9(b) requires that Enercon specify "the time, place, and content" of the allegedly false representations on which these claims are based. <u>United States ex rel. Rost v. Pfizer, Inc.</u>, 507 F.3d 720, 731 (1st Cir. 2007) (internal quotation omitted). The Court is satisfied that Enercon has met this minimum requirement with respect to at least one representation that underlies its fraud claims. Enercon alleges that in April 2008, Carra telephoned Bahr and told her that Enercon's Norton AntiVirus and PC Anywhere software licenses had expired or were about to expire, that Enercon was obligated to purchase renewal licenses for both types of software, and that Enercon would benefit from acting immediately. (Compl. ¶¶ 14-17.) Global is thus on sufficient notice of the

time, place, and content of at least one alleged misrepresentation underlying Enercon's fraud claims.[9]  However,

> Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter.  Although the rule itself is not pellucid, precedent in this circuit, as in a number of others, is clear: "The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."

Cardinale, 567 F.3d at 13 (emphasis in original) (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded on other grounds, PSLRA, 15 U.S.C. § 78u-4(b)(2)); cf. Bartner v. Carter, 405 A.2d 194, 204 (Me. 1979) (discussing fraud in the inducement); Letellier v. Small, 400 A.2d 371, 376 (Me. 1979) (discussing fraud).  Enercon's Complaint is devoid of allegations from which it can reasonably be inferred that Carra knew either (1) Enercon was not responsible for renewal of its software licenses, or (2) PC Anywhere software does not require renewal licenses.  Enercon merely alleges that Carra "knew" these things.  (Compl. ¶¶ 19-20, 38.)  This is insufficient under Rule 9(b).  The Court therefore GRANTS IN PART Global's motion to dismiss and DISMISSES Counts I and IV pursuant to Rule 9(b) WITHOUT PREJUDICE to Enercon's right to replead.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendant's Motion to Dismiss (Docket # 10) and DISMISSES Counts III and VII of Enercon's Complaint WITH PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6); the Court further DISMISSES Counts I, IV, V, and VI pursuant to Federal Rule of Civil Procedure 9(b) WITHOUT PREJUDICE to

---

[9] Enercon also explains that its fraud claims are based on misrepresentations with respect to price.  The Court discusses the relevant allegations supra note 5.

Enercon's right to replead.  If Enercon elects to replead, it shall file an amended complaint no later than January 5, 2010.  In all other respects, Defendant's Motion to Dismiss is DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 22nd day of December, 2009.